# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE-OPELOUSAS DIVISION

Rent-A Center, Inc.                               Civil Action 07-1414

versus                                    Judge Tucker L. Melançon

Danielle Barker                      Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is plaintiff Rent-A-Center's ("RAC") Application To Vacate Decision And Arbitration Award [Rec. Doc. 1], defendant Danielle Barker's Opposition to the Application [Rec. Doc. 13] and RAC's Reply memorandum [Rec. Doc. 17]. Also before the Court are Danielle Barker's *Hall Street* Memorandum [Rec. Doc. 42], RAC's *Hall Street* Memorandum [Rec. Doc. 43], Danielle Barker's *Hall Street* Supplemental Memorandum [Rec. Doc. 48] and RAC's *Hall Street* Reply [Rec. Doc. 51].

## *I. Background*

Barker initially filed a civil action against RAC in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, on August 21, 2005, for damages for employment discrimination based on pregnancy pursuant to the provisions of the Louisiana Pregnancy Discrimination Act ("LPDA"), La. R.S. 23:342. RAC removed the action to this Court on December 19, 2005 and moved to dismiss Barker's complaint and compel arbitration pursuant to the terms of a Mutual Agreement To Arbitrate Claims (the "Arbitration Agreement"). *Barker v. Rent-A-Center East, Inc., Civil Action 05-2191.* The Court granted RAC's motion to dismiss Barker's complaint finding that Barker's claims were subject to mandatory binding arbitration, and dismissed the action. *6:05-cv-2191, R. 25,26.*

1

Barker instituted an arbitration under the auspices of the Federal Arbitration Act ("FAA"), combining her state law LPDA action with federal pregnancy discrimination claims under Title VII, the Pregnancy Discrimination Act ("PDA"). After considering the parties' cross motions for summary judgment, the Arbitrator found that RAC discriminated against Barker in violation of the PDA[1] and the LPDA[2] on the basis of her pregnancy by terminating her employment and by not affording her the same light duty accommodation RAC made

---

[1] With the passage of the PDA in 1978, Congress amended the definitional section of Title VII as follows:

> The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k) (1994).

[2] LSA-R.S. 23:342 provides in pertinent part:

It shall be an unlawful employment practice unless based upon a bona fide occupational qualification:

(1) For any employer , because of the pregnancy, childbirth, or related medical condition of any female employee, ... to discharge her from employment or ... to discriminate against her in compensation or in terms, conditions, or privileges of employment. . . .

3) For an employer who has a policy, practice, or collective bargaining agreement requiring or authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability to refuse to transfer a pregnant female employee who so requests.

(4) For any employer to refuse to temporarily transfer a pregnant female employee to a less strenuous or hazardous position for the duration of her pregnancy if she so requests, with the advice of her physician, where such transfer can be reasonably accommodated, provided, however, that no employer shall be required by this Part to create additional employment which the employer would not otherwise have created, nor shall such employer be required to discharge any employee, transfer any employee with more seniority, or promote any employee who is not qualified to perform the job.

LSA-R.S. 23:342.

available to other employees. The Arbitrator awarded Barker $18,095.20 for back pay and benefits, $15,000.00 for general damages, and $15,000.00 for attorneys fees and expenses. Thereafter, RAC filed this action against Barker, moving to vacate the arbitrator's award.

On March 23, 2008, the Court issued a Memorandum Ruling and Judgment applying what was at that time the relevant Fifth Circuit jurisprudence, *Gateway Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993, 995 (5th Cir.1995).[3] Two days later, on March 25, 2008, the Supreme Court decided *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S.Ct. 1396 (2008), which overturned *Gateway*. In light of the Supreme Court's decision in *Hall Street*, the Fifth Circuit vacated the Court's Judgment and remanded the case for reconsideration in light of *Hall Street*.

As ordered by the Court on January 23, 2009, the parties filed memoranda in support of their positions as to the effect of the holding in *Hall Street* on the Court's March 23, 2008 Judgment. *R. 37, 40.* Therefore, in addition to their original memoranda, the Court has before it and will consider Danielle Barker's *Hall Street* Memorandum and Supplemental Memorandum*, R. 42, 48*, and RAC's *Hall Street* Memorandum and Reply, *R. 43, 51.*

## *II. Standard*

"Judicial review of an arbitration award is exceedingly deferential. Vacatur is available only on very narrow grounds, and federal courts must defer to the arbitrator's

---

[3] In *Gateway*, the Fifth Circuit stated that while arbitration awards ordinarily will not be vacated unless the award was procured by corruption, fraud, or undue means, there is evidence of corruption among the arbitrators, the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties or the arbitrators exceeded their powers, the parties to an arbitration agreement may agree to a broader judicial review of an arbitration award. *See Gateway*, 64 F.3d at 996 (agreement that errors of law shall be subject to appeal required court to review de novo legal issues decided by the Arbitrator).

decision when possible. An award must be upheld as long as it is rationally inferable from the letter or purpose of the underlying agreement. Even the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award. It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable. Moreover, the arbitrator's selection of a particular remedy is given even more deference than his reading of the underlying contract, and the remedy lies beyond the arbitrator's jurisdiction only if there is no rational way to explain the remedy as a logical means of furthering the aims of the contract." *American Laser Vision, P.A. v. Laser Vision Institute, L.L.C.,* 487 F.3d 255, 258 -259 (5th Cir.,2007) (internal quotations and citations omitted). The party moving to vacate an arbitration award has the burden of proof. The court must resolve any doubts or uncertainties in favor of upholding the award. *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385, n.9 (5th Cir.2004) (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 343 (5th Cir.2004)).

In light of the Supreme Court's recent decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, --- U.S. ----, 128 S.Ct. 1396, 1403 (2008), the grounds for vacatur of an arbitration award are restricted to those set forth in § 10 of the Federal Arbitration Act and the grounds for modification are restricted to those set forth in § 11. *Citigroup Global Markets, Inc. v. Bacon,* 2009 WL 542780, 1 (5th Cir.,2009). *"Hall Street* made it plain that the statutory language means what it says: 'courts *must* [confirm the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title,' 9 U.S.C. § 9 (emphasis added), and there's nothing malleable about 'must,' *Hall Street,* 128 S.Ct. at 1405." *Citigroup* at 9.

4

### III. Analysis

#### A. RAC's Application to Vacate

In the Decision and Arbitration Award based on the parties' cross-motions for summary judgment, the Arbitrator ruled that RAC discriminated against Barker on the basis of her pregnancy by terminating her employment and not offering to place her on light or restricted duty for the duration of her pregnancy. In its *Hall Street* Memorandum, RAC contends that the Arbitrator granted summary judgment to Barker awarding her damages and attorney's fees without affording RAC an opportunity to present evidence in opposition to such damages and attorney's fees. RAC also contends that the Arbitrator specifically promised that he would hold a separate hearing on damages which induced RAC to refrain from presenting evidence or argument, but failed to hold such a hearing. *R. 43*. RAC argues that these actions by the Arbitrator constitutes "misbehavior by which the rights of any party have been prejudiced" within the meaning of §10(a)(3) of the FAA. RAC argues in the alternative that the Award should be vacated under Section 10(a)(4) because the Arbitrator exceeded his powers under the Arbitration Agreement when he failed to properly apply Rule 56(c) of the Federal Rules of Civil Procedure in ruling on Barker's motion for summary judgment. *Id.*

Barker argues that RAC's specifications of error do not state grounds for vacatur under *Hall Street*. Barker asserts, however, that the Arbitrator's failure to award exemplary damages "is subject to vacatur under 9 U.S.C.A § 10 because the result was procured by undue means, or alternatively under § 9(a), which allows the Court to modify or correct the award due to evident material mistake 'in the description of any person, thing, or property' referred to in the award." *R. 42*. Based on the language of the statutes quoted by Barker,

5

the Court will construe Barker's motion to vacate under § 10 (a)(1), and her alternative argument as one under § 11(a) of the FAA, "modification or correction; grounds."[4]

In *Hall Street*, the Supreme Court addressed the extent to which courts may vacate or modify the work of arbitrators on grounds beyond those found in Sections 10 and 11 of the FAA. Sections 10 and 11 enumerate the circumstances under which an award may be vacated, modified, or corrected when the action is one brought under the Act. Under § 10, courts are permitted to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Under § 11, courts may modify or correct the arbitrator's award to effect the intent thereof and promote justice between the parties:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

---

[4] Section 9 relates to confirmation of an arbitrator's award and does not include part "a."

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

As in this case, the *Hall Street* parties agreed contractually to give the district court the authority to vacate or modify the award on grounds that were not provided in §§ 10 and 11. The *Hall Street* arbitration agreement required the district court to "vacate, modify or correct any award: (I) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." *Hall Street*, 128 S.Ct. at 1400-01. After arbitration, the district court vacated the award for legal error. Ultimately, the Ninth Circuit held that the agreement terms controlling judicial review were unenforceable under the FAA and ordered the arbitration award reinstated. The Supreme Court "granted certiorari to decide whether the grounds for vacatur and modification provided by §§ 10 and 11 of the FAA are exclusive." *Id*. at 1401. The Court concluded "that §§ 10 and 11 provide the exclusive regimes for review under the FAA." *Citigroup Global Markets, Inc. v. Bacon,* 2009 WL 542780, 2 (5ᵗʰ Cir., 2009) (citing *Hall Street*).

Here, the Arbitration Agreement provided for an expanded judicial review giving each party the right to "bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury." This Court initially found that under *Gateway*, it was required to apply the standard of review used by an appellate court reviewing a judgment from a bench trial. Thus, the Court reviewed the arbitrator's fact-findings, and the factual inferences deduced from them, by a "clearly erroneous" standard of review and applied the *de novo* standard of review to examine the arbitrator's legal conclusions on issues of law. On March 23, 2008, the Court issued a Memorandum

Ruling and Judgment which affirmed the Arbitrator's factual findings and determination that RAC violated the PDA under Title VII and the LPDA, but found that the Arbitrator was clearly erroneous in the amount of back pay and benefits and attorney's fees awarded to Barker. *R. 22, 23.* In light of the clear language in *Hall Street* as well as the Fifth Circuit jurisprudence since *Hall Street*, this Court must reconsider RAC's motion only on the grounds provided in § 10 and § 11 of the FAA. *Gateway* at 9.

### a. Section 10(a)(3) of the FAA

The Arbitrator found that RAC violated the PDA and the LPDA when Barker was terminated because of her pregnancy. Therefore, Barker was entitled to $18,095.20 in back pay and benefits for the period of August 23, 2004 to April 13, 2005 under 42 U.S.C. 1981a(a)(1) and La. R.S. 23:303[5]. In addition to back pay, the Arbitrator awarded Barker $15,0000.00 in compensatory damages for mental anguish.[6] Barker was also awarded $15,000.00 in attorney's fees.[7]

RAC argues the Arbitrator erred by awarding Barker back pay and benefits as well

---

[5] La. R.S. 23:303 states, "A plaintiff who has a cause of action against an employer, employment agency, or labor organization for a violation of this Chapter may file a civil suit in a district court seeking compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, reasonable attorney fees, and court costs".

[6] Section 102 of the Civil Rights Act of 1991 allows "a Title VII plaintiff who wins a back pay award [to] also seek compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *DeCorte v. Jordan,* 497 F.3d 433, 441 (5th Cir. 2007) (internal citations and quotations omitted).

[7] Generally, entitlement to attorney's fees in an action under Title VII is predicated on the recovery of actual damages for the federal claim. *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 618 -619 (5th Cir. 1999). 42 U.S.C. § 2000e-5(k) provides that the court, in its discretion, may allow the prevailing party to recover a reasonable attorney's fee as part of the costs.

as compensatory damages and attorneys' fees without permitting RAC to present evidence as to these damages. RAC seeks vacatur of the awards. Barker argues that "the record demonstrates that RAC had an opportunity to present evidence on damages and did in fact present such evidence," and therefore, there was no misconduct or misbehavior on the part of the Arbitrator under § 10(a)(3). *R. 42.*

RAC cites *Karaha Bodas*, 364 F.3d 300-01 and *Gulf Coast Industrial Worker's Union v. Exxon Co.*, 70 F.3d 847, 849 (5th Cir. 1995) in support of its position that the Arbitrator's failure to hear RAC's evidence and arguments amounts to fundamental unfairness and misconduct sufficient to vacate the award under § 10(a)(3). In *Karaha Bodas*, the Fifth Circuit held that the appellant was not prejudiced by the arbitrator's denial of introduction of evidence in appellant's motion for relief from the arbitrator's decision under Rule 60(b) because the record relied on by the arbitrator contained adequate evidence for his finding of liability and damages. *Id. at 300-01.* In *Gulf Coast*, the Fifth Circuit vacated the arbitrator's award based on the arbitrator lulling Exxon into believing that the evidence in question had been admitted into evidence and then refusing to consider it on the ground that it was unreliable hearsay. *Id. at 849.* Unlike *Karaha Bodas* and *Gulf Coast*, the Arbitrator in this case did not exclude or refuse to consider any evidence. Nor did the Arbitrator use the failure to present such evidence against the employer as in *Gulf Coast*.

Once the Arbitrator determined that RAC violated the PDA and the LPDA, the record reflects that there was ample evidence in order for him to determine Barker's damages. Barker's deposition testimony, which is confirmed by the RAC Coworker Data Sheet and the RAC Account Manager Compensation Plan, establishes the amount RAC owed in back pay and reflects that Barker earned $9.50 per hour and worked on average 48 hours per week,

9

making $450 - $500 per week with some overtime. *R. 1, Exh.B, Depo. of Barker, pp. 56-57; Exh. E; Exh. I.* Barker's demand for past wages and benefits included in the Demand for Arbitration, indicates that Barker earned "494" dollars per week and "fringe benefits at .10." Barker's deposition testimony further indicates that RAC's counsel questioned her concerning the following: (1) prior employment; (2) pay rates and reason for leaving her prior employment; (3) work activities between her termination date at RAC and her subsequent employment with another company; (4) the reasons why she did not work; (5) whether she looked for work during that period; and (6) educational background, prior periods of unemployment, pre-existing medical conditions and work restrictions. *Id. at Exh. B, pp. 18-20, 23-25, 31.*

There is also evidence in the record to support the Arbitrator's $15,000.00 awards of compensatory damages and $15,000.00 in attorney's fees. Barker's medical records contain a report dated December 28, 2004 from Paul K. Dibbs, M.D., Maternal-Fetal Medicine [MFM] of Acadiana, to Barker's OB-GYN, Monty Heinen, M.D. Dr. Dibbs indicates that Dr. Heinen referred Barker to him for MFM consultation. *R. 1, Exh. T;12/28/04 MFM Consultation Report.* In reviewing Barker's medical history, Dibbs indicates that she was "positive for depression," that she had a history of depression and that she was currently on Zoloft and should continue taking the Zoloft. *Id.*

As to the attorney's fees award, the $15,000.00 represents compensation by Barker's attorney for sixty (60) hours at $250.00 per hour. *R. 42.* As required by the Arbitration Agreement, the Arbitrator was an attorney "experienced in employment law," who had personal knowledge of the values of such matters. *R. 1, Arbitration Agreement.* Arbitrators who are "familiar with the practices and customs of the calling" may resort to their personal

knowledge in making an award without any extraneous evidence. *See American Almond Prods. Co. v. Consolidated Pecan Sales*, 144 F.2d 448, 450 (2d Cir.1944).

"As a speedy and informal alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials. Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations. The informal nature of arbitration proceedings effectuates the national policy favoring arbitration, and such proceedings require expeditious and summary hearing, with only restricted inquiry into factual issues." *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir.1990) (internal citations and quotations omitted).

"An 'arbitrator is not bound to hear all of the evidence tendered by the parties.... [He] must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments.' " It is appropriate to vacate an arbitral award if the exclusion of relevant evidence deprives a party of a fair hearing. "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award. A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 300 -301 (5th Cir.2004). Arbitrators need not provide reasons for their award and, if the award is rationally inferable from the facts before the arbitrators, it must be affirmed. *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir.1993).

Barker's damages under the statute depended on the disposition of her liability claims. Once the Arbitrator determined that RAC was liable for violating the PDA and LPDA,

Barker's damages flowed statutorily from RAC's liability. The Court finds that the Arbitrator's consideration of Barker's damages without an additional hearing was reasonable under the circumstances of the case, and did not render the arbitration fundamentally unfair. The Arbitrator held "extensive oral argument" in order to make his determination. *R. 1-8, Decision and Arbitration Award.* Arbitrators are not bound to hear all of the evidence tendered by the parties; however, they must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments. *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1023 5th Cir. 1990 (citing *Hoteles Condado Beach v. Union De Tronquistas Local* 901, 763 F.2d 34, 39 (1st Cir.1985)). The record indicates that adequate opportunity was afforded to both parties to present their positions and the minimum standards of fundamental fairness were met. *Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 395 (5th Cir.2003) (overruled on other grounds). As the Arbitrator's awards were rationally inferable from the facts which were before him, the awards must be affirmed and RAC's vacatur under § 10(a)(3) denied. *Valentine*, 981 F.2d at 214.

### b. Section 10(a)(4) of the FAA

In the alternative, RAC prays for vacatur pursuant to 9 U.S.C.A. § 10(a)(4) on the ground that the Arbitrator failed to apply the Federal Rules of Civil Procedure and Federal Common Law when ruling on Barker's motion for summary judgment.[8] *R. 43.* In particular, RAC asserts that the Arbitrator "ignored" the standard under Rule 56(c) which states that summary judgment is permitted where "the pleadings, the discovery and disclosure materials

---

[8] The RAC Mutual Agreement To Arbitrate Claims states that "[t]he Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motion under the Federal Rules of Civil Procedure and applicable federal common law. *R. 1, Arbitration Agreement.*

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Because, as RAC contends, the evidence showed  there was a genuine issue of material fact or that Barker was not entitled to judgment as a matter of law, the Arbitrator should not have granted summary judgment.

Section 10(a)(4) states that the Court may vacate the Arbitrator's award where, "the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made."   "The requirements of finality and definiteness are ones more of form than of substance. They must not be confused with whether the arbitrators' award was correct or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 650 (2001).  Courts may not vacate an arbitration award based on mere errors on the interpretation or application of the law, nor on mistakes in fact-finding. *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

RAC contends that this case is analogous to *Edstrom Industries, Inc. v. Companion Life Insurance Co.*, 516 F.3d 546 (7th Cir.2008).  In *Edstrom*, the parties entered into an insurance policy containing an arbitration clause specifying that Wisconsin substantive law would govern any dispute between the parties related to the policy. *Id*. at 549. During arbitration, the plaintiff argued for the application of a specific Wisconsin insurance statute that was directly on point. *Id*. at 552-53. The arbitrator never mentioned the statute or demonstrated why it was inapplicable and found in the defendant's favor, although the statute mandated a contrary result. *Id*. The district court denied the motion to vacate the arbitration

award, and the plaintiff appealed to the Seventh Circuit. *Id*. at 549.

The Seventh Circuit reversed, holding that "precisely because arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given them." *Id*. at 552. The court determined that although the arbitration clause required the arbitrator to apply Wisconsin substantive law, the arbitrator did not even attempt to apply the relevant statutory provision and ignored the statute. *Id.* at 552-53. The court emphasized that although mistakes of law by arbitrators are not grounds for overturning an award, the contractual nature of arbitration entitles the parties to have the arbitrator follow their directives. *Id.* at 552. Because the arbitrator made no effort to apply Wisconsin law, the court reversed the denial of the motion to vacate. *Id.* at 553.

RAC's reliance on *Edstrom* is misplaced. In *Edstrom*, although the arbitration agreement provided that Wisconsin law applied, the arbitrator never discussed nor applied the relevant Wisconsin statute that mandated a result contrary to the result the arbitrator reached. Unlike the facts in *Edstrom*, the Arbitrator's decision in this case demonstrates that he did, in fact, rely on Rule 56(c) as stated in the Arbitration Agreement. The Arbitrator instructed the parties to file cross motions for summary judgment under Rule 56(c) and held "extensive oral argument" in order to make his determination. *R. 1-8, Decision and Arbitration Award.*

RAC argues that the following factual findings made by the Arbitrator evidence his failure to apply the Rule 56 standard: (1) Christine Gradnigo, a non-pregnant manager at the Eunice, Louisiana store while claimant worked there, was not required to lift because she was very petite and not strong enough to lift; (2) RAC terminated Barker because of her pregnancy; (3) RAC had a practice of terminating pregnant employees or placing them on

14

involuntary leave; and (4) RAC's "Transitional Duty Program" applied for the duration of an employee's disability. *R. 43.*

RAC first contends that the Arbitrator construed Barker's own evidence regarding her non-pregnant co-worker, Christine Gradnigo, in the light most favorable to Barker and ignored or misconstrued RAC's evidence regarding Gradnigo, which disputed and contradicted Barker's evidence. The record provides that Barker testified in her April 27, 2007 deposition that Gradnigo was "never required to go on any deliveries or pickups, because she, quite frankly, was not strong enough to do it." *R. 13, Exh. 1, 4/27/07 Depo. of Barker, pp. 81-83.* In explaining how she knew Gradnigo was not strong enough, Barker stated "[b]ecause several times when she and I were the only ones in the store, I was attempting to move something on the showroom floor, having a little difficulty, and I asked her to come help me.[9] She tried her very best, but she just didn't have the strength." *Id.* As to how she knew Gradnigo didn't have the strength, Barker stated, "[S]he was just small. She was a very petite person." *Id. at pp. 83-84.* In further testimony, Barker affirmed that during the time she worked at the Eunice store, she never saw Gradnigo lift or go on a delivery or a pickup. *Id. at p.85, 92.*

The record also contains a "Sworn Declaration of Mark J. Languirand" dated May 22, 2007, which states that Languirand was an Account Manager at RAC's Eunice store from "December 30, 2002 until on or about April 16, 2004" and has been the Store Manager for RAC's Baton Rouge, Louisiana store "since on or about July 2, 2005." *R. 1-2, Exh. B, Exh.*

---

[9] Although RAC's written policy established lifting requirements for Account Managers individually, Barker testified that co-workers assisted each other when lifting heavy objects. *Depo. Of Barker, p. 38; 81-83.*

*P.* Languirand states, "[while] working at the Eunice, Louisiana store, I was familiar with an employee named Christine Gradnigo.  I am not aware of Ms. Gradnigo having ever been placed on restricted duty by Rent-A-Center for any reason, or having been permitted by any Rent-A-Center employee to not perform any of the functions of the Inside/Outside Manager position she held, including lifting and moving heavy objects." *Id.*[10]

Barker's sworn testimony provides that during her employment at the Eunice store, she was personally aware that Gradnigo was not required to go on deliveries or pickups where she would be subjected to lifting heavy objects.  Barker further testified to events in which she asked Gradnigo for assistance in dealing with a heavy object and, while Gradnigo tried, she was too weak to assist Barker.  The sworn declaration of Mark Languirand provides that he was "not aware" of Gradnigo being "placed on restricted duty by Rent-A-Center" or  "permitted by any Rent-A-Center employee to not perform any of the functions of the Inside/Outside Manager position she held, including lifting and moving heavy objects."  Barker's testimony provides personal instances and observations of her work with Gradnigo.  Languirand's declaration provides that during his employment at RAC's Eunice store, he was "familiar" with Gradnigo, but does not provide that he worked with her or had any personal knowledge of Gradnigo's work.  Based on the foregoing, the Court cannot make a finding that the Arbitrator violated § 10(a)(4) of the FAA in this regard.

RAC argues that the Arbitrator ignored or improperly applied RAC's undisputed

_____

[10]  The record also provides the May 30, 2007 "Declaration of Steven A. Spratt," RAC's Director of Compensation and Benefits and Custodian of Records for RAC, which states, "The records show that Ms. Gradnigo was never placed on light or restricted duty for any reason." As Spratt's Declaration is unsworn, it is incompetent to raise a fact issue for summary judgment. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-07 (5th Cir.1988) (finding that notarized but unsworn affidavit was not competent summary judgment evidence).

evidence that Barker was temporarily and mistakenly entered into RAC's system as on "terminated" status due to human error or misunderstanding, and not because of Barker's pregnancy. The record is undisputed that Barker was initially told by Semon that she would be placed on mandatory unpaid maternity leave. Instead, she was terminated by him. Semon testified he couldn't recall the specifics of why he terminated Barker, but it was either "a conversation possibly" or his mistaken belief that she was in her first ninety (90) days of employment and did not qualify for leave. *Depo. Of Semon, pp. 61-63.*

The Arbitrator's undisputed finding of facts provides that Barker had been calling RAC's Human Resources to obtain paperwork about her unpaid maternity leave but that she did not obtain an answer until October 1, 2004 when RAC's Human Resources' employee, David Hand, told her she did not work for RAC long enough to qualify for a leave of absence, and, as a result, she did not work there any longer. *Finding of Fact, No. 24.* Semon discovered his mistake in terminating Barker in Early October, 2004 and sent a note to Payroll to correct the mistake. *Finding of Fact, No. 21.* On October 5, 2004, an e-mail to Hand stated, "Could you send out a leave package for Maternity Leave for Danielle Barker. This employee is currently showing terminated, but that is supposed to be corrected." *Finding of Fact, No. 22.* A leave package was sent to Barker by Hand on October 6, 2004. *Finding of Fact, No. 23.*

RAC further contends that the Arbitrator improperly found that RAC had a "practice" of placing pregnant employees on involuntary leave even though Barker's only evidence of this is herself and two other employees, all of whom undisputedly had lifting restrictions that prevented them from performing the essential functions of their jobs. The Arbitrator stated in the body of his decision that "Local RAC management has a practice of terminating or

17

placing pregnant employees on involuntary leave without any consideration of accommodating the employee's 'job duty limitations,' as called for in [RAC's Transitional Duty Program] policy." There is no dispute that RAC's Eunice store placed Barker as well as two other female employees, Natasha Obey and Latifhanie Satcher, on unpaid maternity leave when they notified RAC that they were pregnant. *R. 1, ¶ 17.*

As to RAC's last factual issue, the Arbitrator found that RAC violated the LPDA by not offering the same light duty it offers to other employees, to pregnant employees. The Arbitrator stated, " Louisiana law [LPDA], unlike the PDA, imposes affirmation obligations on employers; specifically, if an employee has a policy of granting transfer of employees to less strenuous positions 'for the duration of the disability,' such employer must offer the same to transfer pregnant employees." *R. 1-8, Decision and Arbitration Award*; La. R.S. 23:342(a)(3)(4). RAC argues that its Transitional Duty policy states that it is a short-term policy that does not apply for the duration of an injured employee's disability. As discussed above, however, the record contained ample evidence to support the Arbitrator's determination that RAC gave at least one employee, Christine Gradnigo, transfers "for the duration of their disabilities." *Id.*

Contrary to RAC's contention that "the Arbitrator ignored federal law and applied his own independently created and unsupported standard for assessing Barker's summary judgment motion, one that bears no resemblance to the standards applied under Rule 56 and the federal common law," *R. 43,* the Arbitrator's decision states that he found no material facts in dispute and that summary judgment was appropriate under the RAC Arbitration Agreement. *R. 1-8.* The Arbitrator based his decision for summary judgment on thirty (30) specific findings of fact, which he found to be undisputed. The record indicates that the

Arbitrator's fact-finding was based on deposition testimony and evidence presented by both parties. *R. 1.*

RAC's contention that the Arbitrator ignored the law in this context is unavailing. Unlike *Edstrom*, where the arbitrator did not even mention the relevant statute, the Arbitrator in this case laid out the relevant standard and proceeded to apply it. Regardless of whether the Arbitrator misapplied Federal Rule 56(c), misapplication of the law is not grounds for vacating an arbitration award under the FAA. "Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair." *Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903 (5th Cir. 1984); *See also, Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir.1990) ("In reviewing the district court's vacatur, we posit the ... question ... whether the arbitration proceedings were fundamentally unfair"); *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992) ("[T]he Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues"), cert. denied, 506 U.S. 870 (1992). The Arbitrator's determination based on the summary evidence fails to violate § 10(a)(4) and does not amount to a denial of fundamental fairness. *Forsythe Intern., S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017 (5th Cir. 1990) ("An evidentiary error "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing").

### B. Barker's Motion to Vacate or Alternatively Modify Judgment[11]

---

[11] The Court will construe Barker's *Hall Street* Memorandum request to vacate or modify the Arbitrator's award as to punitive damages as a motion for purposes of this memorandum

Barker argues that the Arbitrator's conclusion that RAC was not subject to punitive damages is subject to vacatur under § 10(a)(3) because the result was procured by undue means. Barker argues in the alternative, that the Court should "modify or correct the award due to evident material mistake 'in the description of any person, thing, or property,'" as provided under § 11(a) of the FAA. In particular, Barker contends that she and the Arbitrator were deprived of knowledge that RAC's actions violated a Consent Decree entered by the U. S. District Court for the Southern District of Illinois on October 4, 2002 in *Wilfong v. Rent A Center, C.A.*, No. DRH, "a national class action which revealed and supposedly corrected RAC's lifting requirement which discriminated against pregnant employees." *R. 20, Exh. 3.* Barker further contends that because RAC's actions in this case emanated from corporate HR personnel in Dallas, who were presumed to know of the *Wilfong* Consent Decree, RAC's actions warranted the imposition of exemplary damages.

RAC sets out a number of reasons in support of its position that the Court should deny Barker's claims that the Arbitrator's decision as to exemplary damages should be vacated. The Court agrees with RAC. First, Barker's request for a vacatur of the Arbitrator's denial of exemplary damages is untimely. Under Section 12 of the FAA, "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12; *see also Cigna Ins. Co. v. Huddleston,* 986 F.2d 1418 (5th Cir.1993)(State arbitration act preempted to the extent that it conflicts with the three-month requirement for filing motions to vacate an arbitration award under section 12 of the FAA). The Arbitrator's decision was executed on August 1,

---

ruling and judgment.

2007.  As the Court recognized in its April 9, 2008 Order striking Barker's Motion For

Additional Findings And To Amend Judgment, nine months after the Arbitrator issued his

decision, Barker never requested vacatur of the Arbitrator's denial of exemplary damages.

*R. 29, fn.2.*    Second, the Court lacks power under the FAA and Arbitration Agreement to

receive evidence and award additional monetary relief outside of the Arbitrator's Award.[12]

The Arbitration Agreement included "all claims and controversies, past, present and future

. . . that the Company may have against [Barker] or that [Barker] may have against [the

Company]" and was therefore all encompassing.  *R. 1, Exh. V.*  In such a case, "intervention

by the court to award additional relief would be inconsistent with the language and policy of

the Federal Arbitration Act."  *Glover v. IBP, Inc.*, 334 F.3d 471, 477 (5th Cir. 2003) (citing

*Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986)("where the parties made

an agreement intended to avoid court litigation by resolving the entire dispute through

arbitration, intervention by the court to award additional relief would be inconsistent with the

language and policy of the Federal Arbitration Act").

Finally, Barker fails to state a valid basis for the vacatur of the Arbitrator's decision

in relation to exemplary damages.  Basing her argument on § 11 of the FAA, Barker argues

that the denial of exemplary damages "was procured by undue means, or due to evident

material mistake 'in the description of any person, thing or property' referred to in the award,

so as to effect the intent thereof and promote justice between the parties."  She contends that

here, "[t]he Arbitrator's refusal to award punitive damages was based on an evident material

---

[12]  In its March 23, 2008 Memorandum Ruling, the Court vacated the Arbitrator's
decision on attorney's fees and referred to the Magistrate Judge for calculation under the *Johnson*
factors, based on the standard in *Gateway.*

mistake in the description of a person (the persons in Dallas who signed off on the discriminatory acts), and a material mistake as to the existence of a [*Wilfong*] Consent Decree prohibiting RAC's specific actions in this case." *R. 42*.

The Arbitrator's decision not to issue punitive damages was not an "evident material mistake," but was rather, as Barker contends, made without the Arbitrator's knowledge of the *Wilfong* Consent Decree. "Material mistake" is not the same as lack of knowledge. "A mistake is different than to understand wrongly; to recognize or identify incorrectly; to operate out of ignorance or from a lack of knowledge. Under the FAA, a mistake is not evident unless that mistake appears on the face of the arbitration award." *See* Thomas H. Oehmke, *Commercial Arbitration* § 132:1 (2008); *cf. AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 999 (11th Cir. 2007) (According to Webster's II New Riverside University Dictionary 759 (1984), to make a "mistake" is to "understand wrongly" or to "recognize or identify incorrectly." What American complains about is not a "mistake," but rather "ignorance"-a "lack of knowledge.").

In *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir.1993), the court adopted the Sixth Circuit's definition of "evident material mistake" under §11:

> "'[W]here the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator 'exceeded [his] powers'. . . the record must 'demonstrate[ ] strong reliance on that mistake' in making the award." *Id.* (quoting *National Post Office v. United States Postal Service*, 751 F.2d 834, 843 (6th Cir.1985)).

*Id.*

Here, the Arbitrator concluded that "RAC did not act willfully or in reckless disregard of its

22

obligations under the PDA and is not subject to punitive damages. The local RAC employees who terminated Barker did so because of errors in judgment or unsophistication in their knowledge of RAC policies. The LPDA does not provide for punitive damages" *R.1, Exh. 7*. While the Arbitrator did not indicate knowledge of the *Wilfong* Consent Decree, he did not make an "evident material mistake" on the face of his ruling on punitive damages. Thus, Barker's request that the Court vacate or modify the Arbitrator's decision as to punitive damages will be denied.

## IV.  Conclusion

Using the standard of review mandated by the Supreme Court in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, --- U.S. ----, 128 S.Ct. 1396, 1403 (2008) as applied by the Fifth Circuit in *Citigroup Global Markets, Inc. v. Bacon,* 2009 WL 542780, 1 (5th Cir. 2009), the Arbitrator did not violate § 10(a)(3) or  § 10(a)(4) and RAC's Application To Vacate Decision And Arbitration Award will be denied.  As the Arbitrator did not make an evident material mistake as to punitive damages under § 11, Barker's request that the Arbitrator's decision be vacated or in the alternative modified will likewise be denied.